## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

_____ )

PAUL JUDITH ENTERPRISES, INC., )
individually and on behalf of all )
others similarly situated, )
        )
        Plaintiff, )
        )    CIVIL ACTION FILE
v. )
        )    NO. _____
PRIORITY PAYMENT SYSTEMS, LLC )
and PRIORITY TECHNOLOGY )
HOLDINGS, INC., )
        )
        Defendants. )
_____ )

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff Paul Judith Enterprises, Inc., individually and on behalf of the class of customers preliminarily defined below, and files its Class Action Complaint, alleging as follows, based on personal knowledge, investigation of counsel, and information and belief:

**Introduction**

1.      For years Defendants Priority Payment Systems, LLC and Priority Technology Holdings, Inc. (collectively, "Priority") have induced merchants to enroll in card payment processing services via fraudulent misrepresentations and omissions concerning the fees for their services.

2.      Indeed, Priority has employed a pervasive scheme whereby both its form contract documents and numerous agents and resellers make fee promises that Priority never had any intention of keeping.

3.      For example, Priority sales agents and form documents inform prospective merchants that they will be charged the fees set forth on a one-page fee schedule.  Priority and its agents are aware, however, that additional and increased fees will be charged.

4.      These false promises are intended by Priority to induce – and do induce – merchants to execute standardized "Merchant Processing Application and Agreements" ("MPAA") that seemingly support Priority's well-rehearsed sales pitches.  The MPAA purports to bind the merchant to a long-term contract with more than 40 pages of boilerplate fine-print terms that are set forth in the separate "Program Guide."

2

5.     Once merchants are enrolled and locked into long term contracts, Priority imposes previously undisclosed, uncontemplated, and unauthorized fees.

6.     Plaintiff brings this action against Priority for fraudulent inducement, breach of contract, and unjust enrichment.

## Background

7.     In today's business world, most merchants must accept payment for goods and services via credit and debit cards to stay competitive in the marketplace.  In order to accept this method of payment, the merchant must utilize a payment processing service.  As used throughout this Class Action Complaint, the word "merchant" should be taken to mean any individual or entity that accepts credit or debit cards for payments.  This includes non-profits, schools, churches, government agencies, and many persons or entities that are not traditional businesses.  All are subject to the same improper treatment by Priority.

8.     Merchants like Plaintiff rely on companies like Priority to provide this critical payment processing service in accordance with fair and transparent terms.  Indeed, for many merchants, fees for card processing services are the third highest expense following labor and product costs.  Even for a very small business, these fees can easily exceed $100 per month.

3

9.     The card processing system can be extremely difficult to understand, with many involved parties.  For instance, in addition to the merchant who receives payment and the customer who provides such payment, the processing of a card transaction involves several other parties:

(a).    <u>The Card Issuer</u> – the company that issued the credit or debit card to the customer, which is typically a bank such as Chase or Bank of America, and which receives a fee whenever a customer uses one its cards for a transaction. These companies receive fees that are usually calculated as a percentage of a transaction plus a per-transaction fee (e.g., 1.65% + $0.10/transaction).  There are hundreds of different card types and the fee varies based on the type of card used. For example, rewards credit cards command a higher fee than a card with no rewards program.  The fees paid to the issuing banks are generally known as "interchange fees."

(b).    <u>The Card Network</u> – the card networks (i.e., Visa, MasterCard, and Discover) establish and publish interchange fees applicable to each type of card in their system.  The card networks charge additional per transaction fees, such as access fees.  By way of example, Visa assesses an access fee known as the "APF" ("Acquirer Processing Fee"), which is currently $0.0195 per credit card transaction and $0.0155 per debit card transaction, and MasterCard charges an

access fee known as the "NABU" ("Network Access Brand Usage") fee, which is $0.195 per any card transaction.  The card networks also charge various additional fees depending on the merchant and type of transaction.  These additional fees are generally known as "assessments."  The fees established by the card networks (like the interchange fees) apply universally and are not subject to negotiation no matter who the customer, merchant, or processor is.  No entity aside from the card networks has the authority to modify these fees.

(c).   The Payment Processor – this is the entity that processes the payment and ensures that whenever a merchant receives payment for an item or service with a credit or debit card, (i) the customer's card account is debited and the merchant's bank account is credited, (ii) the merchant is assessed all applicable fees, and (iii) such fees are distributed to the proper parties.  Upon information and belief, Defendants have used Total System Services, Inc. ("TSYS") and First Data Corporation a/k/a Fiserv ("First Data") as their payment processors during the time periods at issue.

(d).   The Member Bank – only banks may be members of card networks.  These member banks "sponsor" payment processors so they may process transactions through the card networks.  Priority works primarily with Wells Fargo Bank, N.A. as its member bank.

5

(e).   <u>The Merchant Acquirer</u> – this is the company that markets and sells the services of the payment processor and member bank to merchants. Merchant acquirers essentially act as a "middle man" between merchants and payment processors and banks.   They sell these entities' payment processing services to merchants, ensure they sign a form merchant contract for such services, and then provide customer support to the merchant.   While merchant acquirers often procure merchants directly through their own employees, they also acquire them through a network of independent contractors, which are known such as Independent Sales Organizations ("ISOs").   These ISOs go out into the marketplace and sell payment processing services to merchants.   In exchange, the ISOs receive a percentage of the fees that are charged to the merchant, as well as bonuses based on criteria such as the number of merchants they enroll.  The more merchants ISOs acquire for the merchant acquirer, the more money the acquirer will make.  Priority is a merchant acquirer that enrolls merchants through its own employees as well as a network of hundreds, if not thousands, of ISOs.   For example, one such ISO for Priority is Wholesale Payments, Inc., which operates a large sales organization from its headquarters in Texas.  Wholesale Payments uses exclusively Priority contracts, however, and does not enter any contracts on its own behalf.  Other Priority ISOs include Cynergy Data (now owned by Priority),

Simplify Commerce, Priority Commercial Payments, and dozens of independently-owned offices operated under the "Priority Payments" name nationwide, such as Priority Payments of North Atlanta, Priority Payment Systems Gulf Coast, Priority Payments Local, Priority Payments Global, and Priority Payments of Texas.  All of these sales agents are required to use Priority contracts and marketing materials and to attend training to learn Priority's systems and methods.

10.    The number of involved parties make it difficult for merchants to understand how the payment processing system works and how their fees are calculated.  Merchants thus rely on merchant acquirers and their sales agents to clearly explain these facts on the front end of the relationship.

11.    Unfortunately, Priority's business plan has long been to exploit its position of knowledge and power in an inherently confusing industry to defraud and overcharge merchants.

12.    Priority induces merchants like Plaintiff to do business through inaccurate promises about services and pricing and then has the merchants sign MPAAs that seemingly support these promises.  However, all the while, Priority knows that the promises will not be kept and that merchants are going to be flooded with additional fees that were never disclosed in the contracts.

13.     Priority aggressively perpetrates this scheme.  It has grown rapidly over the past several years by inducing its sales agents to open more accounts.  The resulting standardized sales pitches and contracts intentionally misrepresent, omit, and/or conceal key facts concerning the services it will provide and the fees it knows it will eventually charge merchants if they enroll.

14.     Priority engages in this fraud to induce merchants to do business. Indeed, Priority knows full well that if merchants knew the true nature of its services and/or the extent of the fees they would eventually be charged, they would choose another processor.

15.     After inducing merchants to bind themselves to the standardized MPAA, Priority then systematically crams merchants with unanticipated fees that were not disclosed in the contract and/or that are higher in amount than the fees that were disclosed.  Many of these fees are automatically seized from customer bank accounts whether or not the customers even use Priority's services.

16.     This case challenges the nature and amount of the fees that Priority imposes on its merchant customers in the below-defined classes, and seeks rescission, monetary damages, restitution, declaratory relief, and injunctive relief.

**Parties**

17.     Plaintiff Paul Judith Enterprises, Inc. is a Pennsylvania corporation that does business as "Passport Health PA" ("Passport Health").  Passport Health is headquartered in Monroeville, Pennsylvania and specializes in providing immunizations, medications, supplies, and travel health counseling to prospective travelers.

18.     Defendant Priority Technology Holdings, Inc. is a Delaware corporation headquartered in Alpharetta, Georgia.  The company trades publicly on the Nasdaq market under the stock symbol "PRTH."  According to its website: "[o]ver 200,000 merchants rely on Priority to process over 590 million transactions, representing $55 billion in payments processed on an annual basis." Moreover, Priority's website also discloses that it is the 6th largest non-bank merchant acquirer in the United States.

19.     Defendant Priority Payment Systems, LLC is a Georgia limited liability company that serves as Defendant Priority Technology Holdings, Inc.'s main operating subsidiary.  It too is headquartered in Alpharetta, Georgia.  Priority Payment Systems, LLC is the Priority entity that contracts with Priority's merchant customers.

## Jurisdiction and Venue

20.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(d)(2) because there are more than 100 potential class members and the aggregate amount in controversy exceeds $5 million exclusive of interest, fees, and costs, and at least one class member is a citizen of a state other than Georgia.

21.     This Court has personal jurisdiction over Defendants because they are registered to transact business in Georgia and have engaged in a continuous and systematic course of doing business in Georgia by offering their services to thousands of Georgia citizens and companies.

22.     This Court also has personal jurisdiction over Defendants because they are Georgia businesses headquartered within this judicial district.  Venue is proper pursuant to the forum selection clause found in the Program Guide.

## Common Factual Allegations

**A.     Priority Induces Merchants to Do Business Based on Inaccurate Promises About Pricing.**

23.     Priority has a long history of inducing merchants to enroll in its services through omissions and misrepresentations regarding both the fees it charges and the capabilities of its services.  Hundreds of complaints regarding the fraudulent sales practices of Priority and its sales agents such as Wholesale

Payments, Cynergy Data, Simplify Commerce, and independently-owned "Priority

Payments" offices can be found on the web.

     24.    A few reviews of Priority Payment Systems, LLC from Google are

reproduced below:

**Joe Rosa**
Don't go with this company signed a contract for one rate...then they
magically went up 8 Months later...what good is the
contract...salesman our either inept or liars

**Allen Wickey**
stay away! This company lies and its so hard to get away from them!

**Rohit Roy**
This company is a RIP OFF
THEY ARE SCAMMERS, STAY AWAY FROM THEM

**Jackie Moua**
Ridiculous service. Difficult to contact or get a hold of. Fraudulent
and a scam of a business. Hidden fees on top of ridiculous termination
fee.

**Nafees Saifee**
THIS IS A SCAM!!!!!!!! SO MANY HIDDEN FEES!!!! SALES
REPS ARE CON ARTIST!!!! CUSTOMER SERVICE MINIMUM
ONE HOUR GETTING DISPUTE RESOLVED!!!! THEY WORK
FOR CARD HOLDER NOT THE BUSINESS!!!! I HAVE NOT
GOT ANY STATEMENTS FOR LAST SEVEN MONTHS!!!! I
ASKED CUSTOMER SERVICE TO EMAIL MY STATEMENTS,
THEY REFUSE TO EMAIL MY STATEMENTS INSTEAD
ASKED ME TO LOG ON THEIR WEB SITE

I COULD NEVER GET THRU WEBSITE BECAUSE MY
USERNAME WAS INVALID. TRY TO RETRIEVE MY USER
NAME AND NO LUCK!!!! THEY DO NOT WANT ME TO SEE

MY STATEMENT!!! THEY HAVE ACCESS TO MY BANK ACCOUNT AND IMPOSING CHARGES WITHOUT MY KNOWLEDGE IF I WANT TO DISCONTINUE SERVICE THEY WANT $ 500 CANCELLATION FEE

**Chris Guimaraes**
This company is a scam they will charge you fees which is hidden in the contract DO NOT USE THEM! THEY also ran my credit report without approval this company is bad business see you in court!!

**Kent Ivey**
Don't consider this company. They start out with a cheap rate just to get merchants to sign up, then at 6 months, they double their rates. Their customer service consists of about 1-2 people who do absolutely nothing but try and act professional. It is a scam.

**Jennifer Elizondo**
DO NOT OPEN AN ACCOUNT WITH THIS COMPANY.
Scammers and liars!
Research and find a better company.

**Billy W. Merritt**
Awful. Dishonest. Liars. Cheats. Their word is dirt. Worst of the Worst. I have never been treated so unfairly in my life. What they do is illegal. I fully expect to see this company on an episode of America Greed soon. They have stolen over $11,000 of my money and will not return it.

**Mo**
The worst company I've ever dealt with. They were charging me for a year and a half without me knowing it. They never sent any emails or anything. Their charge shows up like it's a charge from your own bank. Super shady company.

(some typographical errors removed).

25.     One     review     of     Priority     ISO     Wholesale     Payments     from cardpaymentoptions.com (a website devoted to reviewing payment processing providers) is produced below:

> **Barbara Pierson** Says:
> November 8, 2019 at 8:25 am
> Avoid this company like the plague! I signed up in Amarillo with a rep named Braiden Winn. I am a small cleaning company and was thinking of using the service to accept payments for online bookings, which I had not set up yet. I explained to him that it could take several months to set up and that I can't afford any more payments. I was assured that this was free to me. Then the $65 bill hit my checking account. They needed access to my business checking account to transfer payments into. I called Braiden who told me he would straighten it out, a week later, I called him again and he said he dealt with it and I should be seeing a credit. After another week he started ghosting me. Then I got another charge, I called the company and they sent out a cancellation package which took two weeks to get and I was informed that once they get the package back would take another month to cancel the service….I immediately sent back the equipment and docs, then another charge, I called and they said they did not get equipment yet….bla bla, a total of 5 months of charges. Finally after the last charge I called and they said they did not get the equip, I gave them the tracking number and it had been delivered 5 weeks ago! They refuse to reverse any of the charges, stating I should have read the contract as apposed to believing their lying rep. All my fault!!! They waived an early termination fee which I did not know of but refuse to give me back my 5 months of 65 dollar payment, 325 dollars down the toilet! This company is scandalous, do not do business with them!!!!

26.     A  selection  of  other  complaints  about  Priority  itself  from cardpaymentoptions.com exposes the long-term nature of Priority's fraudulent practices:

**Scott** Says:
January 27, 2022 at 8:27 am

Buyer beware. Their sales rep "Dan" was willing to lie straight to my face in order to get me to sign a merchant services contract. Visited my shop on 4 occasions, promising lower rates, better chargeback protection and more. On top of all of this, they only do month to month contracts. No long term commitments. All of that is lies. When I asked them to define how they were coming up with their savings, they stated their pin debit rates were lower. That's a lie. They just made up fake numbers.

I had a lengthy conversion about how I have had bad luck in the past with lying merchant services providers and I was assured their contract was only "3 pages long and could be cancelled anytime". Dan failed to mention the 30+ page contract within the contract that has a 3 year commitment on it. After I did my research and came up with all this information, Dan after spending at least 3 hours in my shop trying to get my business, wasn't willing to put up even 5 mins of effort to repute any of my claims.

I have full documents, contracts & proof of all of this. I even have recorded video with audio logs of his visits. Do not let anyone tell you otherwise. This company SCAMs people into long term contracts they do not realize they are signing. I was lucky enough to read every letter of the contract, but most won't be. STAY AWAY. Look into pending lawsuits, they have one for just this reason.

**William McCrae** Says:
May 11, 2021 at 3:57 pm
They have withheld over $100,000 in income taxes from my credit card transactions and are holding it UNDER THE WRONG TAX ID #!!!! Have called, have sent documentation and they refuse to correct the problem or issue a corrected 1099K! This has been going on for years and they refuse to fix it. This is a scam agency. Their customer service is awful and unresponsive.

14

**Video Association Of Dallas** Says:
July 21, 2019 at 8:32 am
They hacked our account and stole money from a nonprofit

**Trent Fuller** Says:
June 20, 2019 at 5:33 am
I am a reseller of merchant services and let me tell you, PRIORITY PAYMENTS IS NOT THE COMPANY TO PARTNER WITH. I work with multiple merchant services companies to supply my clients with services. Priority Payments drops the ball on EVERYTHING we do whether it be not setting up a batch time, customer service, funding, etc. They have the absolute worst customer service and are terrible to work with. I would not recommend working with priority whether you are an ISO looking to resell products or a merchant that is looking for a new credit card service. ABSOLUTELY TERRIBLE EXPERIENCE FOR ME!!

**Tuyetminh T Le** Says:
May 2, 2019 at 7:56 am
bad service lie about the charge of service they charge you double amount what they tell you

**John** Says:
March 7, 2019 at 2:43 pm
Priority Payments is a SCAM – they promise services they cannot provide and once they have your money they will not return your calls- we had to do a charge back on our VISA to get a refund for the "setup" fee. They even ignored VISA's request for a response to a charge back – do NOT believe this company's BBB rating – apparently that is something you can buy. There are TONS of better merchant processors out there- and virtually any one of them will match or beat your current price- don't waste your time with these fools.

**Dharma Customer** Says:
February 19, 2019 at 3:26 pm
I signed up with a great company (Dharma) which has excellent customer service. Unfortunately, they use Priority Payments to

15

process. So far, both transactions (large amounts) were held until I called in with info. They made sure not to notify me of the hold until the end of the week, the day I was supposed to have the funds in the account, so that I would have to wait over the weekend to receive funds. Both charges took 6 days to receive.

I am hoping Dharma works with more than one processor as 6-days in unacceptable.

**John Pulitano** Says:
January 4, 2019 at 8:34 am
I am very unhappy with this service. They lied about the fees and charged me for things I was not aware of. Then when I cancelled they charged me $450. This service is a scam. Do Not use them!!!

**Cindy** Says:
August 22, 2018 at 1:50 pm
Priority payments over charged me for a whole year to the tune of $3400.00. They refused to credit me even after admitting it was their error. "But that was the previous year and we are in a new year now, so we will credit these couples months of current year only. This was not their only "computer error" . There had to be at least 3 other times they over charged me for thing not conducive to the contract that I signed. They did reimb. on those charges, but never the biggest one mentioned above. Bottom line is…they'll come in with a super rate, but every month you will have to go over your statement with a fine tooth comb, because they won't make enough money on your processing with that rate you signed for. So you will have to spot their "computer errors". Our business has been around for 87 yrs, I have seen a lot of processors come and go in my 40 years here, and they were the sleaziest!

**Akili Polee** Says:
July 13, 2018 at 4:11 pm
By far the worse experience with a payment solution that is offered. I paid roughly 600 dollars per month for a service that I was only able to use for 2 weeks for 8 MONTHS! So I am out over 4,000 dollars because they could never get their customer support working with

each other. DO NOT waste your time on this company at all. It was absolutely horrible!

**Atlantic Inspections And Services** Says:
April 4, 2018 at 9:19 am
A Business that holds great value in consistent lies! Under NO CIRCUMSTANCES would we recommend this unprofessional company to anyone! After assuring us that we could process unlimited amounts of payment from our clients, we were held at a 2,000 dollar a day amount and our money paid to us through our clients would be held for 5 DAYS!!!! There is usually a 24 hour turnaround time or 48 hour at the latest for payment retrieval which is NORMAL. We even placed a 3 way call with our Bank after this Priority Company blamed our personal bank for funds not released, lol. Wowwww!!! Thank God our Clients have trust in not only our work but, our honesty . Remember this, HONESTY IS THE BEST POLICY!

**Jesus Corona** Says:
February 16, 2018 at 11:42 am
this company is a big mess CUSTOMER SERVICE IS BAD BAD BAD BAD if u want to waste your time and money THIS IS THE PERFECT COMPANY THEY LIE SO THEY CAN PUT YOU IN A CONTRACT

**Stefan Simic** Says:
December 18, 2017 at 9:44 am
This company is a mess. Held my money for so long, terminated my account without letting me know! I was still processing transactions even, I didn't know that my account is terminated. Such a "great" business practice. Please don't go to do any business with this company. Very unorganized and unresponsive.

**Sam Kim** Says:
November 20, 2017 at 3:53 pm
Salesman said no contract. Company charged an early termination fee. I asked a copy of contract. They said they have no contract I signed. I asked a refund. They said No.

17

**Melissa** Says:

April 10, 2017 at 9:03 am

While trying to obtain funding for my small business, the funding company required me to switch processors to PPS. I was told this was an application form ONLY, not a final contract. I was able to obtain better funding through a different company, so PPS was never utilized, nor did I receive any equipment from them. What I did receive was monthly deductions from my account, which, when trying to track down, turned into the cycle game, of call this person, who told me to call another person, etc…Finally, I was sent an account closure form, which I returned. Last week another $495.00 was taken out of my account. Again, phone call circles, with no resolution. The original funding company refuses to help resolve this, PPS won't even give me answers, and now I am stuck paying for services never received, for what was supposed to only be an APPLICATION, not a contract. How is this possibly legal, when no services where ever utilized. Someone is making some nice money scamming people with fees. I would never do business with either the funding company, or this processor again. It's hard enough to make it in business without the unethical actions of people taking advantage. Thanks a lot Priority Payment Systems.

**Scott** Says:

January 17, 2017 at 2:35 pm

Horrible company. Head of sales will not even work with a company that ended up being there reps fault. I would highly recommend against this company. Told one thing and they did another.

**Carolyn** Says:

November 23, 2016 at 4:24 pm

Interchange fees and with holding funds. The customer service is very poor and out right rude. The employees and all staff from technical support to risk management refused to give the President's name and contact information, stating I don't know look it up on the internet. My contract was with Cynergy and I am assuming PPS purchased them. They held my funds received for services I provided and refused to release them to me. After numerous calls and emails risk management in noting all there errors stating the transaction was

18

completed manually, I provided proof of CHIP card transaction on terminal. Then V.G. in risk management stated she would only release the funds in increments over a six months period. Not contract. Personal decision. I am sure the President does not know the methods that these unprofessional people are operating. I did take there advice and looked him up on the internet and wrote him. The risk management person after demands release the funds back to the clients, without any concern for my company not receiving funds for service provided through my merchant services. To add insult they have sent my file to Oxygen Collection Company to collect fees for their service plus interchange fees. This is a total rip off. I did not do business with this collection agency. Thanks

**Dan** Says:
November 22, 2016 at 9:39 am
Unfortunately when I opened my business I chose this awful company. From the very beginning it's been a nightmare. Theres been so much that has went wrong I don't even know where to begin. First the overcharged me for my POS system by about 40%. 600 on Amazon and they charge me 1000. Then I went the first 3 weeks of business without a system because they were "programming" it. Then when we finally got it the draw was damaged. Had to be replaced. Then after it was installed and they were long gone we realized all the prices were wrong and lots of items were missing so we basically had to reprogram the whole system after they just took 3 weeks doing it. Finally got it all correct just to find out the system can't even do the simplest of functions like track the correct amount of sales. Or even process a simple return. On top of that I was promised a credit card rate below most of its competitors in the 1-2% range instead every month I'm paying above most other companies somewhere are 2.85-3%. So I finally have enough and say I want out and now that's even a problem for this company. I'm supposedly on a one year contract I never signed and it will be 500$ to terminate early. Ok I'll wait out this mess for a couple months then get out but they won't simply let me cancel. I have to call exactly 30 days before my contract renews for them to let me out. Unbelievable. Stay away from this company.

**Shanette** Says:

September 14, 2016 at 10:58 am

This company has the worst customer service I have ever seen. After being told several times that our rep would come out and help with some issues, he has no showed every time. They are holding our income and not depositing into our account which they never informed us of. I have so many issues that need resolved and apparently Priority Payment doesn't care at all about a satisfied customer. I would be completely shocked if anyone from corporate responds to this complaint!

**Karen Brooks-Hodges** Says:

September 9, 2016 at 12:23 pm

We were promised good rates. After 3 months we complained due to there being no savings let alone a $600 a month savings. At which point they decided to give us a new online PayTrace and only then did we save "some" money. I was told no term and send the processor back within 10 days which is what I did. I got a call that we had a 36 month contract and at the bottom on the 3rd page it was in Fine print "$495" fee for early termination. Now I looked at it 3 times and another saw it after looking at it 3 times also going line by line. It was so fine I couldn't even see it with my glasses and had to get out a magnifying glass. They are awesome until you sign on the dotted line. So disappointed, in fact I will pay my $495 early cancelation because I will save that in 2 months with Transfirst and they DO have a month to month contract and it's in the document. Buyer beware!!!

**Randy** Says:

March 4, 2016 at 2:33 pm

We were introduced to priority payment by one of their sales, Byron Edmonds. He's a straight up liar. I specifically asked if there is a contract because I didn't take time to read the papers, and he said there isn't. Turns out there is a 4 year contract. The only reason I changed to priority payment from square is that because Byron told me that there is an additional fee from the bank if I'm using square. I called the bank to make sure, and they did not charge us an extra fee.

**Randy** Says:

<u>March 18, 2016 at 11:07 pm</u>

My restaurant is at Portland. So I'm guessing he works at Portland or Beaverton, OR. It does say on the contract, but then again it was my first real contract I've ever signed. You know how you just skip ahead the "I have read and agree" contract online. So because I was lazy, I asked him what do I need to know and if there's gonna be a contract. He told me about the payment and that there is no contract. He told me that <u>square</u> charges me a total of 6.75% and that his machine charges 0.5%. Which I found out later being 2.75 and 1.75 respectively. But his machine charges me $99 monthly.

**Karen Brooks-Hodges** Says:

<u>September 9, 2016 at 12:26 pm</u>

We were also told there was no contract until you cancel. Yep…and there word means nothing. You better see the paper and read ALL fine print.

**Julie Muler** Says:

<u>February 15, 2016 at 12:53 pm</u>

in my opinion and the web also, absolutely the worst credit card processing company I have been with in the 25 years in business, lie,lie,lie so much they almost make you believe them, constant harassing phone calls and they keep trying to take money out in small increments even after 5 phone calls to tell them to stop, they actually forged documents about the contract after we cancelled them because they kept raising the rates. I have been harassed so much that I called my state senator who my dad knows and showed him the evidence I had and all the harassing texts and emails from them and he said he will put someone on it ha ha you losers I cant wait

**Dont Doit** Says:

<u>January 12, 2016 at 1:11 pm</u>

DON'T DO IT. It is not worth the hassle. They require you to jump through hoops to just get started, then their equipment only works half the time (and no it's not our internet because we were fine before and immediately after we were done with them.) Then, they tell you later that they are holding a percentage of your money. They say you will

get it when you leave. It's now been 6 weeks and I still haven't received the money that was in the reserve account. Not to mention the many screw ups on our account. Don't do it.

**Lisa** Says:
February 16, 2016 at 9:20 am
I AGREE 100% with ALL the negative comments about Priority Payments!
The AGENT came out, installed "the hardware" crashed MY COMPUTER, I PAID to have the computer FIXED, and WE cancelled ( with a letter) without receiving ANY service, and WERE BILLED for MONTHS for services we never received. We had to REPLACE OUR BANK account , and were never funded back money STOLEN from our account from a FIRM who DID NOTHING but COST US MONEY. HORRIBLE FRAUDULENTCOMPANY

**Kathy** Says:
November 4, 2015 at 9:34 am
In April 2015, I decided to streamline all my business services through one company so I called to cancel my account with Priority Payment Systems. This was done with my agent representative on April 20, 2015. However, due to negligent paperwork filing, Priority Payment Systems continued to debit a monthly fee from my account from May 2015 – August 2015 even though I was no longer using them as my credit card processor. I called on several occasions to the customer service line to get clarification on why I was continuing to get charged or perhaps get a resolution; unfortunately, the representatives could do nothing more than to try and reach the agent assigned to my account and/or leave a message for them to call me back.

The agent on my account never returned my calls or emails and so I reached out to the Vice President of Client Services hoping to receive a resolution and I have been supremely disappointed in the service and how this issue has been handled. As I stated earlier, I called several times yet the VP said they only have one record of a call ever made (August 19th) while also stating that my account was closed in

22

July. If that is true, how would I have cancelled my account in July, if there is no record of me calling until August 19th?

I have sent over proof of the charges made on my account (statements/bank records/telephone logs) to the VP, which have largely been ignored. At this point, it has become more than just a refund issue and become more about principle.

When I was a client, I received great service. However, after ceasing ties with Priority Payment Systems, I find that the unsanctioned monthly charges, irresponsible paperwork filing, lack of communication and lack of complaint resolution to be extremely disappointing. While my emails have been thorough and detailed, the responses back have been short, offering no explanation, providing absolutely no resolution and accepting no accountability whatsoever.

**Kathy** Says:
January 14, 2016 at 9:37 am
I own a small restaurant business in Glendale, AZ. In April 2015, I decided to streamline all my business services through one company and I called to cancel my account with Priority Payment Systems. This was done with my agent representative, Vivian Dao on April 20, 2015. I specifically asked if there needed to be signed document of dissolution and she said no, that she would take care of it. Following that call, she NEVER filed the paperwork and subsequently ignored all calls. If your agent was trained and knew the processes in place then she knowingly gave me false information and stole money from a small business owner. Priority Payment Systems continued to debit a monthly fee from my account from June 2015 – August 2015 even though I was no longer using them as my credit card processor. I called on several occasions to the customer service line to get clarification on why I was continuing to get charged or perhaps get a resolution; unfortunately, the representatives could do nothing more than to try and reach my agent assigned to my account and/or leave a message for them to call me back.

The agent, Vivian Dao, never returned my calls or emails, so I reached out to the Vice President of Client Services, Tom Liney,

hoping to receive a resolution. I have been supremely disappointed in the service and how this issue has been handled. As I stated earlier, I called several times yet the VP adamantly stated that they only had one record of a call ever made (August 19th) and that my account was closed in July. If that was true, how was I able to have my cancelled my account in July, if there is no record of me calling until August 19th? I asked this question to Mr. Liney and he had no response except to suggest that perhaps I had been calling a different 800 number to file my complaints and if that were the case, they would not have record of that. Subsequently, I sent copies of my phone records to Mr. Liney to prove my point that I called on several occasions (April 20th – 2 calls, August 18 – 2 calls, August 19 – 1 call, September 25 – 1 call).

Mr. Liney then stated that he had a document signed by me, which cancelled my service in July. When I asked him to send me a copy of this document, he immediately responded by saying that he would offer me a "$50 courtesy credit," if I would cancel my complaint to the BBB and any other disputes I had pending. I asked again, to see the copy of the supposed document that was signed by me and Mr. Liney responded by saying that there wasn't one. Mr. Liney then offered to refund the full amount that I requested to be refunded ($65.85) but that I had to provide "proof" off all my cancelled disputes prior to refunding my account. Considering how I had been treated throughout this experience, I declined to provide the "proof" of my cancelled disputes because I had no faith that the company would follow-through and credit my account. They had ample opportunity to do the right thing and credit my account but they did not and still have not.

I have sent over proof of the charges made on my account (statements/bank records/telephone logs) to Mr. Liney which have all been ignored. I have caught Mr. Liney in lie after lie, which only proves to me that he, along with this company, have no integrity whatsoever. At this point, it has become more than just a refund issue and become more about principle. I strongly believe that, considering the amount of resistance I've received by Mr. Liney and despite the

overwhelming evidence that I have given, that I cannot be the only business they have tried to take advantage of and strong-arm.

When I was a client, I received great service. However, after ceasing ties with Priority Payment Systems, I find that the unsanctioned monthly charges, irresponsible paperwork filing, lack of communication and poor complaint resolution to be extremely disappointing.

While my emails have been thorough and detailed, the responses back have been short, offering no explanation, providing absolutely no resolution and accepting no accountability whatsoever. When I have presented them with direct questions or evidence of my efforts, they have been ignored, not even acknowledged.

I have already filed complaints with the Better Business Bureau, the Arizona Attorney General and other social media outlets. I will continue sharing my story with business owners and community members just to ensure that that this doesn't happen to anyone else again.

**Toni Ames** Says:
April 22, 2015 at 2:47 pm
I had a business named In the Zone that used your services for a few years that closed in august of 2012. When the business closed u were notified that we no longer needed your services and twice since then. I have called at least 3 times to get this matter taken care of with no results, I'm still being charged and the charges have gone up substantially. I would like to request again at this time to have my services cancelled. I have had some major life complications that made me unaware of being charged for the last year, since my business is no longer open there was no reason to keep aware of my account that I thought was dormant. I would really like to talk to a customer service representative asap about getting this matter finally resolved. My number is [REDACTED – personal information]. For in The Zone Apparel in Roosevelt Utah.

**Tom** Says:

<u>February 2, 2015 at 1:09 pm</u>

Priority Payment systems has got to be the worst fraud business I have ever seen or heard of or dealt with in my 40 years of being in business. I was conned into using them with a new car wash installation and within 5 days I knew I was in trouble. Closed them out in less than 3 weeks in October of 2014 and I am still over $700 short of being paid for all the customers credit card purchases. Now for the past two months they are harassing me to pay them a huge cancellation fee. This company sucks and should be forced to close asap. Never ever use these crooks people. You will live to regret it. Have tired calling dozens of times and can never reach the "right" person to get this issue solved. I have perfect credit and now they are threatening me to list me as a charge off with the 3 credit bureaus. BEWARE people. YOU will suffer financially if you ever have anything to do with them.

**Mike** Says:

<u>September 19, 2014 at 1:29 pm</u>

Terrible company. They did not disclose ALL the fees even after I asked multiple times. When I received my first statement I was charged 4 times what I was expecting. Trying to cancel their service has been a nightmare. I have resulted to blocking their company from charging me anymore fees. They charged my account for shipping card readers without my authorization and never disclosed I would be charged for such. They now threaten to place my business on some "black list" and charge me a termination fee. STAY AWAY from this company.

**Randy Jahier** Says:

<u>July 1, 2014 at 11:55 am</u>

My experience with Priority Payment Systems Northeast was a negative one. On 4/22/14 two representatives of the company stopped in my business to solicit their services. I told them I was very happy with my current service provider and wasn't interested. They convinced me to let them review a few of my past statements and reported back to me that they could save me, on average, about $70 per month. Not a lot, but $70 is $70. I said I would give them a try

26

with the requirement that they would send me an e-mail right away, stating the savings I could expect and that if those savings were not realized that I could cancel at any time with no early termination fee. They agreed to do so. They appeared to be honest and sincere so I signed the contract as the VP personally promised that he would send me the e-mail that we discussed, later that day.

Well, of course the e-mail never came. I waited a week or so and sent him an e-mail reminding him of his assurance that he would send me this e-mail before I would allow them to switch my service. He did not respond. A few days later his associate stopped in to schedule a day when the service could be switched over. I told him I was still waiting to hear from the VP and would not switch until his letter of assurance came through. He apologized and promised to contact the VP and have him send the letter right away. Several more days passed and still no response. On 5/5/14 I sent an e-mail to the VP telling him that I did not want to proceed with their services based on his failure to provide me with the promised letter. Several days later he finally responded saying that they had already done all the paperwork and would I please reconsider. I told him "no thank you."

Nearly a month later I found that the company had debited my bank account for the minimum monthly fee, even though I never even allowed them to set up their system in my store. I immediately contacted the VP on 6/10/14 and he said that he would take care of it and call me the next morning. No return phone call, of course. I called him again on 6/12/14 and he said he had been busy but would take care of reversing the charge. I asked him how long it would take and he said to give it 4-5 business days. Over a week later, still no credit to my account. I left him one last phone message on 6/23/14. Never heard back. Still no credit.

I am of course to blame for believing their sales pitch. Once they had my signature they disappeared. Lesson learned. Hopefully this review will prevent others from making the same mistake I did. Stay away from Priority Payment Systems Northeast.

**Lisa D** Says:

February 6, 2014 at 10:32 am

Do NOT use this merchant! The "nice" sales person came to our business, assured me of considerable credit card processing savings, crashed my computer, didn't close my account, which…by the way was NEVER plugged into. We Never used the services, but because she didn't close the account we have been charged OVER $190 in FRAUDULANT fees. I have called the office to no satisfaction. I have had to stop ACH debits, request reimbursements, and visit my bank over 4 times. I have made numerous calls to both Priority and merchant services, and they STILL continue to debit our account for " STANDARD, and MINIMAL processing charges, even if we have NEVER used their services! Our next step is to close our business checking account, maybe even get a lawyer, to sue for damages to our company.

**Vladimir Paulino** Says:

April 19, 2013 at 11:59 am

My name is Vladimir Paulino. And my company's name is Atlantic Gutters LLC. We signed up with priority payment systems approximately three years ago. When their sales man Ken Knobel came to my place and went over the fees, he made it clear that we would be paying a fee of 1.69 % on ALL of our transactions. And a fee of .25 cents for each credit card swipe. What he conveniently and in a very conniving and deceitful way forgot to mention was that there was a different fee attached when we manually punched in a card. And that there was another fee if the credit card being processed was a rewards card. Ken visited a friend of mine who is in the same industry as i am, and i told my friend to don't even think of signing up with them. My friend Danny went elsewhere and is very satisfied with whom he is currently using. I am also in the process of switching to another company for my credit card transactions. I CAUTION ANY ONE WHO IS EVEN CONSIDERING SIGNING UP WITH PRIORITY PAYMENT SYSTEMS.

**Mark** Says:
March 14, 2013 at 3:18 pm
I am also a vendor with complaints against Priority Payment systems. Over the year that I have been using them, they delay payment of my funds, and have held payments for as long as two months. They are holding $10,000 of my money as a security and will evaluate as to whether I am due that money back after 30 days! They are a totally unscrupulous company and I would caution anyone thinking of using them to use a name bank for the same services. I would be interested in joining in a class action lawsuit against this company for loss of income, countless Insufficient Funds fees, etc.

27.   More  reviews  of  Priority/Wholesale  from  www.cardfellow.com

(another website that provides information on payment processors), are produced

below:

Posted by Jill Johnson on Dec 06, 2021

The level of incompetence is astounding, but the sales before was very convincing. Please beware! They processed charges for me and hold the money and the fees are not what the sales person told me. The fees are expensive and the equipment is still not working 30 days after I received it and was charged for it.

Posted by Becky Krause on Nov 29, 2021

Very deceptive company. To say that a customer "signed the contract" is pretty lame. The sales rep apparently didn't read the contract either when our business was told there were no fees to terminate knowing we were only going to use the product for 90 days. Don't use this company. You will be sorry.

Posted by Kathy on Sep 22, 2021

Use high pressure sales through unsolicited calls. Told them not interested & they continue to call & email & they continue to beg for

29

a copy of our latest credit card processing bill. Told them we're under contract & they try to push sales by stating they will pay our cancellation fees. Told them our processor provides a POS register we purchased & claims they provide POS but wouldn't answer questions about it. They, dont take no for an answer & continue to harass!

Posted by Alex on Feb 15, 2021

The sales rep lies through his teeth about fees, monthly cost, equipment cost and cancelation policy and fees. customer service staff, who change their story every time you call them, and about everything. cancelation department that isn't available to talk to you for weeks after you request to cancel and change the fees every time.. bull.

Posted by John Sterling on Oct 31, 2017

Blake at Wholesale Payments lied to us about the savings, fees and cancellation costs. They don't save you what they promise. Couldn't cancel quick enough. Stay away from this company.

28.    There are many more negative reviews about Priority and its agents and resellers across dozens of sites on the Internet.  As these reviews indicate, Priority lures in customers through a standardized, deceptive enrollment process.

29.    All Priority agents that sell its payment processing services (including Wholesale Payments, Flat Rate Processing, and the independently-owned "Priority Payments" offices) undergo training during which they are taught how to discuss Priority's pricing and the capabilities of its services so as to lure merchants in, while omitting details that may scare them off.

30.     Before merchants enroll, and to induce them to enroll in its services, Priority agents are taught to dangle the low fees displayed on a written one-page service fee schedule.

31.     Priority agents are also taught to stress that no additional fees will apply.

32.     Priority agents are further trained to conceal material facts about the true pricing, for instance, the low processing rates will be raised over time and additional monthly service fees will be added, regardless of whether merchants want or use the associated services.

33.     Priority sales staff and sales agents, ***many of whom are literally incarcerated criminals***, are willing to participate in this ruse because their compensation is driven by commission and bonuses based on the number of accounts they enroll.  The more accounts they sign up, the more money they will make.

34.     Specific former sales agents have confirmed these improper practices. Anonymous former employees of Priority agent Wholesale Payments posted the following on cardpaymentoptions.com:

<u>October 5, 2020 at 8:41 pm</u>

I worked as a telemarketer for Wholesale payments while I was incarcerated at FPC Bryan in Texas. There's also a call center at the Tallahassee federal correctional center. ***We were trained to be very manipulative and misleading.***

<u>July 9, 2020 at 11:37 am</u>

. . . I quickly learned the "call center" is actually a women's prison, and these women were calling on business owners setting appointments any which way they could, to receive some type of incentive during their incarceration . . .

(emphasis added).

35.    Thus, this is not a situation in which rogue agents have carried out a scheme without corporate knowledge.   Priority has embraced this scheme, including paying substantial amounts to sales agents that are known criminals. Priority knowingly pushes improper sales tactics in order to rapidly grow the company, which is known to enrich Priority executives and investors.

36.    Indeed, Priority has never had any intention of charging the merchant only those fees and rates disclosed in the fee schedule.   Priority at all times knew full well the disclosed fees and rates would be increased and new recurring fees would invariably be added once merchants sign and are locked into lengthy contracts often terminable only by payment of substantial penalties.

37.    Priority's business model is built on such pricing misrepresentations. Indeed, throughout the relevant period while Priority was promising prospective merchants that they would be charged the rates and fees set forth in their fee schedules, Priority was charging more to existing customers.   Priority knew it would eventually charge prospective new customers the higher, unidentified fees if they signed up.

38.    Priority knows full well that if merchants were apprised of its true billing practices, they would never enroll in Priority's services.   For example, no reasonable merchant would bind itself to a lengthy contract term containing huge early termination penalties if it knew the disclosed fees and rates were merely "introductory" or "initial" charges and would be massively increased.   That is a lose-lose situation for merchants as they would either be forced to pay the termination penalties or the increased fees.

**B.    The MPAA and Program Guide.**

39.    If a prospective merchant is agreeable to the services and fees represented by the Priority sales agent in the fee schedule, the agent then prepares and presents the merchant with a form MPAA, such as that attached hereto as Exhibit A.

40.    Each MPAA contains a "SERVICE ACCEPTANCE AND FEE SCHEDULE" ("Fee Schedule") that sets forth the fees that the merchant will pay if it does business with Priority.  This pricing section is a highly material part, if not the most critical part, of the deal to merchants.

41.    The MPAA is configured to back up what the sales agent has communicated to the merchant concerning pricing.  Indeed, the MPAA itself does not indicate that (a) the fees and rates set forth in the Fee Schedule will increase (nor would increases be expected since technology and competition have actually driven down costs for payment processing) or (b) new, previously undisclosed fees and rates will be charged.  Such terms unquestionably are important to merchants and would impact their decision to do business with Priority.

42.    Instead of conspicuously setting forth such critical provisions in the MPAA, Priority buries them in a separate document – the 42-page fine print Program Guide, which the last page of the MPAA incorporates by reference in tiny font.

43.    A sample Program Guide is attached hereto as Exhibit B.  Multiple versions of the Program Guide have been in effect during the relevant period, but the material terms have been the same throughout.

44.    The Program Guide is a boilerplate document that is not negotiable. *See*, *e.g.*, MPAA, p. 3 ("**NO ALTERATIONS OR STRIKE-OUTS TO THE PROGRAM TERMS AND CONDITIONS WILL BE ACCEPTED**") (emphasis in original).

45.    Priority has each merchant sign a "Confirmation Page" acknowledging receipt of the Program Guide and summarizing its key parts. *See* Sample Confirmation Page (Exhibit C hereto).

46.    Like the MPAA, this "Confirmation Page" does ***not*** indicate that (a) the fees and rates set forth in the MPAA will increase or (b) new, undisclosed fees and rates will be charged. *Id.*

47.    To find this term, the merchant would have to dig through a few dozen pages of fine print language. There, in the middle of page 26 the merchant would see that Priority reserved for itself the right "to increase our fees or add new fees for Services for any reason at any time, by notifying you thirty (30) days' [sic] prior to the effective date of any such change or addition." *Id.* at § 19.5.

48.    This material term, intentionally buried deep within the legalese of the Program Guide, represents an effort by Priority to covertly backtrack from the rates and fees prominently set forth in the MPAA.

49.    Indeed, boiled down to its core, this provision purports to give Priority unilateral discretion to charge whatever it wants for merchant services even if such fees and rates are vastly different and higher than those that are clearly set forth in the MPAA.

50.    Despite its best efforts, however, this term does not actually authorize or condone Priority's pricing manipulations.  Section 19.5 still requires Priority to provide a 30-days advance written notice before rates and fees may be amended, notice that Priority often does not provide.

D.    **Priority Crams Merchants with Undisclosed Fees.**

51.    After Priority starts providing merchant services, almost immediately it begins cramming merchants with charges that are inconsistent with those agreed-upon in the MPAA's Fee Schedule or otherwise allowed by the contract.

52.    Indeed, Priority increases agreed-upon charges and also adds new categories of charges that were not referenced in the MPAA.  Moreover, Priority does so without providing the 30-day advance notice required by the Program Guide.

53.    Priority's whole business model is built on misrepresentations and omissions during the enrollment process.  Indeed, throughout the relevant period, while it was promising prospective merchants that they would be charged the rates

36

and fees set forth in their MPAAs, Priority was charging much more to existing customers.  Priority knew they would eventually charge prospective merchants more if they signed up.

54.    Priority knows that if it disclosed these additional charges in the MPAAs or specifically told merchants that their fees would invariably go up, merchants would be much less likely to do business.

55.    Instead, Priority crams merchants with these unanticipated fees after the relationship has commenced and merchants are bound to three-year deals that are often only terminable upon payment of hefty penalties.

56.    Priority sales agents tell customers they are not locked into a contract and can terminate at any time.  As soon as customers attempt to cancel, however, Priority informs them they must pay hundreds of dollars to escape the contract.  No merchant would sign the MPAA if Priority's sales agents told the truth about the early termination fee.

57.    Whether fees during the contract or for early termination, Priority seizes these additional amounts from merchant bank accounts before merchants even know they are gone.

58.    Priority's normal practice is to fail to send statements itemizing its charges to merchants.  This not only leaves merchants to wonder how the charges

deducted from their bank accounts were calculated, or to what specific fees or services they attributable to, but precludes merchants from receiving advance written notice of Priority's future planned fee manipulations, as statements are the primary (if not the only) method of communicating such notice.

59.     Finally, Priority does not provide notice that fees have been deducted from merchant accounts until after they are already gone.  The statements created by Priority are not bills and need not be voluntarily paid by merchants.  Rather, statements are created and made available for merchant review after the fees have already been seized by Priority.  Thus, merchants lack a mechanism to dispute fees before Priority has already deducted them from the account.

60.     Those merchants that notice and complain about the overcharges are routed into an infinite circle of automated messages and holding the line in Priority's so-called customer service system.  The end result for most merchants is that the only way out of paying the improper fees is to pay an extortionate early termination fee, which often exceeds $300.

61.     Priority has been able to keep its schemes going for years.  Payment processing is largely unregulated, so no governmental agency is directly charged with overseeing merchant acquirers like Priority.

62.     This case challenges all improper fees imposed by Priority, whether the result of fraudulently induced contracts or overcharges not authorized by the parties' contract.

## Individual Factual Allegations

63.     Plaintiff Passport Health is a victim of Priority's scheme.

64.     In or about July of 2016, Passport Health was in the market for card processing services because its then processor was imposing hidden fees and excessive charges for "PCI non-compliance."   Passport Health was put in touch with agent Tim Burns of Priority ISO Flat Rate Processing.

65.     Mr. Burns informed Passport Health Executive Director Mary Sauer that Priority was different because it did not impose hidden charges and also ensured all of its merchants were PCI-compliant so they did not get charged PCI non-compliance fees.   Mr. Burns presented Ms. Sauer with a Priority MPAA containing a Fee Schedule.   The agent explained this document set forth all applicable charges Passport Health would pay for Priority's services.

66.     Based on the assurances of Mr. Burns as well as disclosures in the MPAA, Ms. Sauer executed the MPAA.   *See* Passport Health MPAA (Exhibit D hereto).

67.    At no time before she signed the MPAA was Ms. Sauer advised by the agent or any of the documents she was given to sign that the fees would be increased or previously unspecified fees would be added.  Had she known that Priority intended to manipulate the agreed-upon pricing, she would not have enrolled in Priority's services.

68.    For the vast majority of Passport Health's tenure as a customer, it did not receive statements from Priority itemizing its charges.  Rather Ms. Sauer just noticed Priority made monthly debits from Passport Health's bank account and assumed Priority was charging it in accordance with the MPAA, as Mr. Burns indicated would be the case.

69.    In or about February 2022, Ms. Sauer noticed what she believed to be irregular activity and demanded that Priority provide her with itemized statements for Passport Health's prior debits.  Priority provided several recent statements and Passport Health then realized that it was being overcharged in violation of the contractual terms (entered based only on Priority's fraud and misrepresentations).

70.    For instance, Passport Health noticed that Priority often assessed discount rates of 45 basis points, as opposed to the 39 basis point rates set forth in the MPAA.  Priority also charged "Industry Non-Compliance Fees" of $24.95 per month even though the MPAA set these fees at "[u]p to $14.95 [per month]" (and

40

despite Mr. Burns' assurances such fees would not be charged in the first place because Priority ensures all of its merchants are PCI-compliant).

71.    The most recent such charges are reflected on a Priority statement dated February 28, 2022, and were deducted from Passport Health's account by Priority in early March of 2022 (i.e., less than 60 days prior to the filing of this Class Action Complaint, which sets forth written notification of Passport Health's challenge to these fees, both on behalf of itself and all others similarly situated).

72.    Priority did not provide the 30-day prior advance notice required by Section 19.5 of the Program Guide before it began deducting these increased rates/fees from Passport Health's account.

73.    For instance, Passport Health was never provided nor received written notification via mail, email, or any other medium that Priority had decided to increase the charges in the MPAA, let alone when the fees would be increased.

74.    Once Passport Health realized it was being overcharged, it immediately terminated service with Priority.

75.    Passport Health was induced to enroll, and chose to enroll, in Priority's services based on its representations regarding the pricing terms that would supposedly apply.  Had Passport Health known the truth about Priority's fee

practices and the pricing that would actually apply, it would not have done business with Priority.

76.     As a consequence of Priority's schemes, Passport Health and the members of the proposed class were fraudulently induced into doing business with Priority and have been wrongfully forced to pay unauthorized fees and charges, including as set forth herein.  Priority has improperly deprived Plaintiff and those similarly situated of significant funds, causing ascertainable monetary losses and damages.

77.     The improper fees and charges described herein are illustrative only and are not intended to provide a full listing of the improper fees paid by Plaintiff.  Indeed, as previously noted, Priority often fails or refuses to send statements itemizing its myriad charges.

78.     In discovery, Plaintiff expects to obtain the full level of detail needed to prove that other amounts it has been charged were also improper.

## **Anticipated Contract Defenses**

79.     It is anticipated that Priority will lean heavily on the Program Guide in an effort to defend its conduct.  However, since Plaintiff was fraudulently induced to enter a contractual relationship with Priority, its contracts are subject to rescission and such provisions are not enforceable.

42

80.     In any event, the Program Guide does not authorize Priority's pricing

actions.

81.     *Contractual Notification.*  Priority may argue that Section 19.10 of the

Program Guide requires merchants to give written notice of any fee disputes within

60 days of the date Priority debits the fee from the merchant's account.

82.     Plaintiff disputes this interpretation of Section 19.10, but even if such

interpretation is correct, a condition precedent to the notice requirement is Priority

providing or making available merchant statements itemizing all charges, thus

giving merchants the facts needed to make an informed dispute.  Priority, however,

routinely fails to provide such statements.  Any running of the notice requirement

has been equitably tolled as a result.

83.     Moreover, Passport Health has provided Priority with timely, written

notice of the improper discount rate and "Industry Non-Compliance Fees," thus

fulfilling the notice requirement.  *See* ¶ 71, *supra*.

84.     *Amendment.*  Priority may also argue that Section 19.5 of the Program

Guide gives it the discretion to increase or add new fees, regardless of whether

such actions materially conflict with the pricing set forth in the MPAA.

85.     But Priority must provide advance notice prior to making fee changes

and it does not do so.  *Id.* ("we may also increase our fees or add new fees for

Services for any reason at any time, by notifying you thirty (30) days' [sic] prior to the effective date of any such change or addition"); *also* ¶¶ 72-73, *supra*.

86.    In any event, Section 19.5 is not enforceable and Priority may not use it to justify its decision to charge more than merchants agreed to pay.

87.    This provision is invalid because it lacks mutual consideration. Indeed, the provision purports to give Priority discretion to change the pricing of its services (the most material of all terms) for any reason or no reason.  This renders Priority's promise to provide services in exchange for the rates and fees set forth within the MPAA illusory and unenforceable for lack of consideration.

88.    Even if Section 19.5 were not illusory, it is unconscionable.  The provision is procedurally unconscionable because the bargaining process was fundamentally unfair.  Priority (the stronger party) intentionally did not note on the MPAA or the Confirmation Page – the documents that all merchants (the weaker parties) review and sign – that it gave itself discretion to change rates and fees set forth in the MPAA.  Instead, Priority set forth this purported right deep in the Program Guide, a separate document.

89.    Priority knew such a provision would be important to merchants and would affect their decision to do business.  By burying the provision as it did, Priority knew that merchants would never become aware of it until after the

MPAA was signed and a contract was formed. Moreover, Priority engaged in the foregoing deceptive acts despite knowing full well that Section 19.5 could have a profoundly detrimental effect on merchants' ability to receive the fruits of the contract (i.e., services for the contracted-for rates and fees, as opposed to the rates and fees that Priority subsequently determined it wanted to charge).

90.    Section 19.5 is also substantively unconscionable because it is wholly one-sided and unreasonably favorable to Priority. Indeed, it provides Priority complete control to disregard the agreed-upon rates and fees and charge merchants whatever it wants over the term of the contract.

91.    This discretion is especially dangerous here because Priority automatically debits monies from merchant accounts before providing statements itemizing such debits. Thus, Section 19.5 allows Priority to double or even triple the agreed-upon rates and to seize such additional amounts from merchants before merchants have any opportunity to object, let alone to refuse payment.

92.    Merchants must either live with paying much higher fees than they were informed they would pay at the beginning of the deal or subject themselves to the costly early termination penalties.

93.    Such early termination penalties directly contradict the uniform sales pitch of Priority's agents, who are trained to promise that customers can terminate

at any time without penalty.  No merchant in its right mind would ever voluntarily agree to such a "Catch 22" situation.  Thus, in order to continue to sign up new accounts, Priority has determined that its sales agents must mislead prospective customers as to these two most-significant aspects of Priority's business model.

94.     Priority may argue Section 19.5 is not unconscionable because Section 24.3 grants merchants the right to terminate without penalty before the effective date of the fee change.  That right, of course, is dependent upon the merchant receiving advance written notice of the fee change, which does not always occur due to Priority's routine practice of failing to provide itemized statements.

95.     Finally, even if Section 19.5 gave Priority discretion to modify merchant pricing, good faith and fair dealing constrains Priority's ability to manipulate fees in a manner not contemplated by the parties.  Contractual discretion is not a license to steal.

96.     Priority's manipulation of merchant fees and charges was done for no other reason than to increase profits.  Indeed, based largely on improved technology and increased competition, fees and costs for payment processing have been gradually declining for several years.  Undisclosed fees for useless, unwanted

ancillary services and fee increases were wholly unwarranted and thus Priority's activities do not comport with good faith and fair dealing.

97.    *Voluntary Payment.*  The voluntary payment doctrine also does not apply here.   Indeed, by the time statements were made available to merchants breaking down the prior month's charges (when Priority actually made statements available), Priority had already taken such amounts from Plaintiff's bank account. Thus, all fees are charged and taken before statements are delivered (and merchants receive notice of such fees).  For this and other reasons, the voluntary payment doctrine is inapplicable.

## Class Allegations

98.    Plaintiff brings this action on behalf of itself and all others similarly situated.

99.    The class is preliminarily defined as follows:

All United States customers of Priority who were assessed any fee not identified in the fee schedule of their merchant processing application and  agreement  or  in  an  amount  that  exceeded  the  fee  amount identified in such fee schedule.

100.   Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate and as the Court may otherwise allow.  It is very likely that additional or modified classes or subclasses will be appropriate.

47

101.   Excluded from the class are Defendants, their parents, subsidiaries, affiliates, officers, and directors, any entity in which Defendants have a controlling interest, all customers who make a timely election to be excluded, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

102.   The time period for the class is the number of years immediately preceding the date on which this Class Action Complaint was filed as allowed by the applicable statute of limitations, going forward into the future until such time as Defendants remedy the conduct complained of herein.  For example, the statute of limitations for breach of contract actions under Georgia law is six years.  It is also possible that the applicable statute of limitations will be tolled based on Defendants' alleged improper conduct.

103.   Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can meet all the applicable requirements of Federal Rule of Civil Procedure 23 and can prove the required elements on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

104.   **Numerosity.**   The members of the class are so numerous that individual joinder of all the members is impracticable.  There are hundreds of

thousands of merchants that have been damaged by Defendants' wrongful conduct as alleged herein.  The precise number of class members and their addresses is presently unknown to Plaintiff but can readily be ascertained from Defendants' books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, and/or published notice.

105.  **Commonality and Predominance.**  Numerous common questions of law and fact exist as to the claims of Plaintiff and the other class members.  Such questions include, but are not limited to:

(a).    Whether Defendants have established a scheme to sign up new customers by promising services, rates, and fees they know to be inaccurate;

(b).    Whether Priority violated its contracts – including the covenant of good faith and fair dealing – by assessing improper fees;

(c).    Whether Defendants are liable to Plaintiff and the other class members for imposing improper fees;

(d).    The interpretation and enforceability of certain provisions in the Program Guide;

(e).    Whether Defendants were unjustly enriched by their conduct herein;

(f).    The proper method or methods by which to measure damages and/or restitution; and

(g).    Whether Defendants should be enjoined from engaging in any or all of the improper practices complained of herein.

106.    Defendants have engaged in a common course of conduct toward Plaintiff and the other class members.  The common issues arising from this conduct that affect Plaintiff and the other class members predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

107.    **Typicality.**  Plaintiff's claims are typical of the other class members' claims because, among other things, all of the claims arise out of a common course of conduct and assert the same legal theories.  Further, Plaintiff and the other class members were comparably injured through the uniform misconduct described above.

108.    **Adequacy of Representation.**    Plaintiff is an adequate class representative because its interests do not conflict with the interests of the other class members; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action

vigorously.  Class members' interests will be fairly and adequately protected by Plaintiff and its counsel.

109.  **Declaratory and Injunctive Relief.**  Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other class members, thereby making appropriate final injunctive and declaratory relief, as described below.  Specifically, Defendants continue to knowingly enroll customers through fraud and misrepresentation, overbill customers, and utilize inapplicable, unenforceable contractual provisions in order to block the class members from seeking legal relief or terminating the relationship.  Class-wide declaratory and/or injunctive relief is appropriate to put an end to these illicit practices.

110.  **Superiority.**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and each of the other class members are small compared to the burden and expense that would be required to individually litigate its claims against Defendants, thus rendering it impracticable for class members to individually seek redress for Defendants' wrongful conduct.  Even if class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent

or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## Claims for Relief

## Count I

## Fraudulent Inducement
### (Both Defendants)

111.   Plaintiff repeats paragraphs 1-19 and 23-97, *supra*.

112.   As alleged herein, Defendants intentionally and fraudulently induced Plaintiff and the class to do business through their material omissions and material affirmative promises of services and pricing terms that Defendants never had any intention to honor.

113.   Among other things, Defendants intentionally (a) promised Plaintiff and the class members, as an inducement to enter into business with Defendants, pricing that was lower and different than what Defendants knew would be charged, (b) failed to properly disclose the true applicable rates and fees on the MPAA's Fee Schedule, and (c) disclosed rates and fees that do not reflect, omit, conceal, and affirmatively misrepresent the true pricing model that Defendants knew would

apply.  Notably, Priority's agents stated that customers could terminate the service at any time without penalty; a promise Priority knew it would not honor.

114.   Defendants knew that their disclosed pricing terms did not accurately reflect the rates and fees they would ultimately charge merchants, including Plaintiff and the other class members, at the time the pricing terms were provided to such merchants.   Defendants made the foregoing misrepresentations and omissions alleged herein to induce Plaintiff and the other class members to rely on them.

115.   Defendants' misrepresentations and omissions alleged herein were material, including in that they would be considered very important to merchants in deciding whether or not to do business with Defendants, and were known by Defendants to be false and misleading.  Plaintiff and the class members would not have signed the MPAAs if they had identified the true rates and fees Priority knew it would charge, including but not limited to excessive discount rate and fees for "Industry Non-Compliance."

116.   Prior to executing MPAAs, Plaintiff and the other class members were deceived by Defendants with respect to the pricing terms that would be applicable to their accounts.

117.   The nature and amounts of fees charged, as represented by Defendants at the time of merchant enrollment (including in the in the MPAA) were material to and justifiably relied upon by Plaintiff and the other class members.   Had Defendants accurately represented their true pricing terms to Plaintiff and the other class members, and not misrepresented, obscured, and concealed their true pricing terms from them, Plaintiff and the class members would not have contracted with Defendants to receive payment processing services.

118.   Accordingly, Plaintiff and the other members of the class were fraudulently induced to enter into contracts with Defendants.

119.   Plaintiff and the class members are entitled to seek damages and/or rescission of their contracts with Defendants, or other equitable relief, including restitution of funds Defendants took from them without permission.

120.   Plaintiff will make any necessary election of remedies at the appropriate juncture.

## **Count II**

### **Breach of Contract and**
### **Breach of the Covenant of Good Faith and Fair Dealing**
**[Defendant Priority Payment Systems, LLC ("PPS") Only]**

121.   Plaintiff repeats paragraphs 5-16, 24-28, and 39-97, *supra*.

122.   <u>Direct Breach.</u>   The parties have an express contract (i.e., the MPAA and Program Guide).

123.   Defendant PPS repeatedly breached these terms by imposing fees not set forth in the Fee Schedules on Plaintiff and the class without giving the 30-day prior advance written notice required by Section 19.5 or otherwise complying with the fee amendment provisions of the Program Guide.

124.   Plaintiff and the class members have performed all, or substantially all, of the conditions precedent and obligations imposed on them.   There is no legitimate excuse or defense for PPS's actions.

125.   Plaintiff and the members of the class sustained damages as a result of Priority's direct breaches of contract.

126.   <u>Breach of the Duty of Good Faith and Fair Dealing.</u>   Georgia law also imposes upon each party to a contract the duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.   Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.   Evading the spirit of the bargain and abusing the power to specify terms constitute violations of good faith and fair dealing in the performance of contracts.

55

127.   Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

128.   By charging fees that are inconsistent with those laid out in the MPAA, PPS has violated the spirit of the contract and thus breached the covenant of good faith and fair dealing.  Even if PPS had given itself contractual discretion to increase fees, or add new fees, such discretion is constrained by good faith and fair dealing under Georgia law.

129.   For instance, in exercising its discretion to raise the amounts of the rates and fees disclosed on the MPAA, PPS abused any pricing discretion.  Indeed, PPS imposed these increases not in response to external factors but merely to pad its own bottom line and in contravention of Plaintiff's and the class members' reasonable expectations.  This conduct by PPS was arbitrary and in bad faith.

130.   PPS's conduct described herein has had the effect, and the purpose, of denying Plaintiff and the class members the full fruits of their bargains with PPS.

131.   Plaintiff and the class have performed all, or substantially all, of the obligations imposed on them under the contract.  There is no excuse or defense for PPS's conduct under Georgia law.

132.   Plaintiff and the class members sustained damages as a result of PPS's breaches of the covenant of good faith and fair dealing.  As such, all elements for a successful claim under Georgia law have been satisfied.

## Count III
## Unjust Enrichment
### (Both Defendants)

133.   Plaintiff repeats paragraphs 1-19 and 23-97, *supra*.

134.   Plaintiff asserts a common law claim for unjust enrichment.  This claim is brought only in the alternative and is contingent on PPS's contracts with Plaintiff and the class members being deemed fraudulently procured, ineffective, inapplicable, void, or unenforceable.  In such a scenario, unjust enrichment will dictate that Defendants disgorge all monies and items unjustly received.

135.   As alleged herein, Defendants were unjustly enriched at the expense of Plaintiff and the other members of the class, who were improperly charged by Defendants.

136.   Plaintiff and other class members were unjustly deprived of money obtained by Defendants as a direct and proximate result of their fraudulent inducement to enter contracts which they never would have entered but for Defendants' misrepresentations.

137.    Plaintiff and the other class members were unjustly deprived of money obtained by Defendants as a direct and proximate result of their contract, which may be deemed void or unenforceable in whole or in part by this Court.

138.    It would be inequitable and unconscionable for Defendants to retain the profit, benefit, and other compensation obtained from Plaintiff and the other class members as a result of the wrongful conduct alleged herein.

139.    Plaintiff and the other class members are entitled to seek restitution from Defendants as well as an order from this Court requiring disgorgement of all profits, benefits, and other compensation obtained by Defendants by virtue of their wrongful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the proposed class demand a jury trial on all claims so triable and judgment as follows:

1.    Certifying this case as a class action pursuant to Federal Rule of Civil Procedure 23;

2.    Temporarily and permanently enjoining Defendants from continuing the improper practices alleged herein;

3.    Granting rescission of the contracts;

4.     Declaring certain contractual provisions to be inapplicable or unenforceable;

5.     Awarding damages in an amount to be determined by a jury;

6.     Requiring restitution or disgorgement of all amounts improperly obtained by Defendants;

7.     Awarding pre-judgment interest at the maximum rate permitted; and

8.     Awarding such other relief as this Court deems just and proper.

DATED this 1st day of April, 2022.

Respectfully submitted,

WEBB, KLASE & LEMOND, LLC

By:   */s/ E. Adam Webb*
E. Adam Webb
  Georgia Bar No. 743910
  Adam@WebbLLC.com
Matthew C. Klase
  Georgia Bar No. 141903
  Matt@WebbLLC.com
G. Franklin Lemond, Jr.
  Georgia Bar No. 141315
  Franklin@WebbLLC.com

1900 The Exchange, S.E., Suite 480
Atlanta, GA 30339
Telephone: (770) 444-0773

*Attorneys for Plaintiff*